(No. 16234.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALVIN BEAL *et al.* Plaintiffs in Error.

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*when evidence does not support indictment for confidence game.* An indictment charging the defendants with obtaining money by means and by use of the confidence game is not supported by evidence that the defendants, in violation of the Motor Vehicle law, sold to the prosecuting witness a motor car on which, as subsequently discovered by the sheriff, the engine number had been changed.

2. SAME—*when trial court should set aside verdict.* Where the proof fails to establish the crime charged in the indictment and clearly shows that there is no merit in the prosecution, the trial court, on motion for a new trial, should set aside the verdict of guilty instead of entering judgment thereon, thereby compelling the defendants to prosecute a writ of error.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding.

GEORGE W. SPRENGER, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, E. E. BLACK, State's Attorney, and VIRGIL L. BLANDING, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Alvin Beal and Earl Buchanan were indicted, tried and convicted in the circuit court of Tazewell county for the confidence game. The indictment charged defendants with unlawfully and feloniously obtaining from Lewis Rankin his money by means and by use of the confidence game. After the court overruled motions for a new trial and in arrest, defendants were sentenced to imprisonment in the penitentiary.

The evidence introduced by the People to secure a conviction was in substance as follows: In June, 1923, defendants sold Lewis Rankin a second-hand Ford touring car.

Beal was a stranger to Rankin. Buchanan was the son of a former neighbor of Rankin. He accompanied Beal to Rankin's residence on a farm and they sold him the car for $250, which he paid in cash. Rankin demanded a bill of sale. Defendants procured and delivered to him a bill of sale signed by George Ruler. The bill of sale stated the purchase price was $410, and upon Rankin inquiring why, they said that amount was given as the purchase price in order that Rankin might obtain insurance. Rankin kept and used the car until some time in September, 1923. He never made any complaint that the car did not operate well nor did he ever complain that he had paid too much for it. Some time in September the sheriff of Tazewell county without any writ or process took possession of the car and Rankin has never had it since. No one had ever claimed the car as a stolen car. Rankin testified he examined the numbers on the car, and after purchasing it applied for and obtained from the Secretary of State a license to use it.

Fred Ewing, a deputy sheriff of Tazewell county, testified he, the sheriff and another deputy went to Rankin's farm and took possession of the car. He testified they made a heat test to determine whether numbers had been removed from the engine; that the heat test disclosed another number, but the number was not brought out so that he could tell what it was. He said it had two sets of numbers, which was disclosed by applying what he called the heat test. Arthur VanBuren, another deputy sheriff, testified he saw the heat test applied and that it disclosed more than one number on the engine. Another witness testified that by the application of heat other numbers showed up under the numbers on the engine but they could not be read.

There was much incompetent testimony admitted over objections of defendants' counsel which the court afterwards struck out upon motion. We deem it unnecessary to refer to the testimony further than to say that the reason the sheriff took the car from Rankin was the belief that

the numbers on the engine had been changed. How he received the information does not appear, as no one made any claim to the car or in any manner interfered with Rankin's possession and use of it. The claim of the State is based on the proposition that the engine numbers had been changed; that the Motor Vehicle law makes it unlawful for anyone to sell, own or possess a motor vehicle the original engine number of which had been destroyed, removed, altered or defaced. Admitting that defendants might have been guilty of violating paragraph 236 of chapter 121 of our statutes for selling a car on which the engine number had been removed, altered or defaced, it would not justify a conviction under. an indictment for the confidence game. The case made by the proof of the People scarcely bears any resemblance to the elements necessary to constitute the crime of the confidence game. Independent of any other errors committed on the trial, the judgment must be reversed because the proof fails to establish the crime charged. This was recognized by the trial court, as shown by remarks made in overruling a motion for a new trial. The court said if he acted on his own judgment he would not hesitate a moment to set the verdict aside; that there was no legal evidence to warrant the verdict. The court said he wanted the Supreme Court to review the case, and that he was satisfied the judgment would be reversed without remanding, and that would put an end to the case. He advised the State's attorney that if he had any more cases like this one, to inform the grand jury that there was no merit in it. The trial court's opinion was right that there is no merit in this case, and we think, entertaining that view, it would have been better to have ended the case in the circuit court by granting the motion for a new trial instead of rendering a judgment upon the verdict, thereby compelling defendants to prosecute this writ of error.

The judgment is reversed.          *Judgment reversed.*